Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ANTHONY R. NEGRÓN BURGOS<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrido | TA2026RA00079 | *Revisión Administrativa* procedente del Departamento de Corrección y Rehabilitación, Oficina de Clasificación de Confinados<br><br>Caso núm.: P676-11808<br><br>Sobre: Custodia |

Panel integrado por su presidente, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.[1]

Trigo Ferraiuoli, jueza ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de abril de 2026.

Comparece el recurrente, Anthony R. Negrón Burgos (Negrón Burgos o recurrente), y solicita que revoquemos la *Resolución*[2] emitida y notificada al recurrente el 27 de octubre de 2025, por el Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación (Comité, CCT o parte recurrida). En el aludido dictamen, el Comité ratificó la custodia mediana del recurrente[3].

El 27 de marzo de 2026, la parte recurrida, Departamento de Corrección y Rehabilitación (Departamento, DCR o recurrida), presentó su *Escrito en Cumplimiento de Resolución.*

Evaluados los escritos presentados por las partes, se confirma el dictamen recurrido.

---

[1] OATA-2026-040.

[2] Véase, Anejo III, apéndice del recurso. Entrada 1 SUMAC-TA.

[3] Negrón Burgos solicitó reconsideración el 12 de noviembre de 2025 (fecha de recibo en la Unidad de Servicios Sociopenales) tiene ponche de la División de Clasificación de Confinados del 20 de noviembre de 2025. El 21 de enero de 2026, el recurrente recibió la notificación de la Oficina de Clasificación de Confinados de que no se acogió su solicitud de reconsideración.

## I. Trasfondo fáctico y procesal

Conforme surge del expediente ante nuestra consideración, Burgos Negrón fue sentenciado el 21 de marzo de 2009, por el Tribunal de Primera Instancia, Sala de Ponce a una sentencia de 99 años por los delitos de Asesinato en 1er grado (JVI2009G0039) y Maltrato de menores (JLE2009G0346).

El 27 de octubre de 2025, el Comité de Clasificación y Tratamiento del Departamento de Corrección se reunió para evaluar el plan institucional del recurrente. El Comité de Clasificación y Tratamiento acordó ratificar al recurrente a una custodia mediana, utilizando la modificación discrecional para un nivel más alto "gravedad del delito"[4]. Ese mismo día, el Comité emitió la Resolución que nos ocupa, la cual contiene determinaciones de hechos y conclusiones de derecho para sustentar su decisión de ratificar el nivel de custodia mediana del recurrente. Por su pertinencia, a continuación, transcribimos los fundamentos de la decisión del CCT:

> Al aplicar la escala de reclasificación arroja una puntuación de mínima, puntuación que no refleja los elementos para una evaluación completa y objetiva del caso. Por lo que se utiliza el modo discrecional para un nivel de custodia más alto en conformidad a las modificaciones discrecionales, ante la gravedad del delito..... **En el presente caso el CCT se acoge a la gravedad del delito (asesinato en primer grado de una menor-hija biológica), colocando al confinado en una categoría que exige mayor supervisión, vigilancia y control, dados los factores de riesgo intrínsecos al hecho, la sentencia impuesta y el daño causado. El suceso ocurrió entre los días del 20 de marzo de 2009 al 21 de marzo de 2009, se desprende había recibido una notificación de la maestra del Head Start, en el cual le dijo que su hija se había portado mal y le enseñ[ó] una foto como evidencia del suceso en la escuela. Al llegar a su hogar le reclamó a la niña sobre su mal comportamiento y ella se lo negó. Empezó a regañarla y no se acuerda en qué lugar la golpe[ó], perdió la noción del tiempo. Después cocinó, comieron, se recostaron y por la noche su hija le pide agua, al darle agua, comenzó como a vomitar, notó que le estaba faltando el aire y llamó al 911**

---

[4] Véase, Anejo 2 del apéndice del recurso.

**para auxiliarla, llegaron y luego de examinarla le indicaron que había fallecido. Los delitos que resultan en la pérdida de vida de una víctima menor de edad requieren especial consideración al momento de avaluar condiciones de custodia, debido al impacto reversible del crimen y a la necesidad de garantizar la seguridad pública, la confianza en el sistema de justicia, y el cumplimiento efectivo de la sentencia impuesta. Este fue sentenciado a 99 años, por asesinato en primer grado, y Art. 75 Maltrato de menores, donde solo ha cumplido, 16 años, 7 meses y 2 dias. Extingue su sentencia el 16 de agosto de 2106 y es dentro de 8 años (poco más) que será evaluado por la JLBP (16 de marzo de 2034).** El Comité de Clasificación y Tratamiento toma en consideración, que se ha beneficiado de programas educativos, universitarios, tratamientos ofrecidos en la institución y realiza labores como servidor de alimentos. **Lleva 4 años en custodia mediana (25 octubre 2021), reclasificado de custodia máxima.** …. En virtud de lo anterior, la decisión de no modificar la condición actual de custodia del confinado se sustenta en una evaluación objetiva y razonable, atendiendo a los criterios legales pertinentes y no a meros sentimientos de represalia ni criterios infundados. Concluyendo que es una determinación razonable, cumpliendo con la reglamentación aplicable. Así las cosas y siendo nuestro interés ayudar, trabajar, modificar y tomar toda acción pertinente, para garantizar un proceso de rehabilitación adecuado, reforzando positivamente la conducta institucional deseada para el confinado y siendo el objetivo final del DCR, es necesario observar ajustes institucionales en medianas restricciones físicas tiempo adicional, exhortando al confinado a mantener una conducta positiva y estable. (2) Ubicación actual. (3) Para que se beneficie de programas vocacionales-curso Arte y Diseño Gráfico. (4) Para evaluación y determinar necesidad de servicios y tratamientos. (5) Por necesidad de servicios en el módulo.[5]

Inconforme con la determinación del Comité de Clasificación, el 12 de noviembre de 2025, el recurrente sometió una reconsideración a la Oficina de Clasificación de Confinados.

El 21 de enero de 2026 el recurrente fue notificado de la determinación emitida por la Oficina de Clasificación de Confinados, de que no se acogió la solicitud de reconsideración.

Aun insatisfecho, Burgos Negrón acude ante nos y formula los siguientes señalamientos de error:

---

[5] Bastardillas en el original, negritas nuestras.

1. La determinación del Comité de Clasificación y Tratamiento es arbitraria, caprichosa e ilegal por comentarios personales discriminatorios.

2. El Manual 9151 de Clasificación expone al confinado a doble exposición.

En esencia, Burgos Negrón señala que el lenguaje utilizado en los fundamentos de la determinación recurrida introduce elementos subjetivos innecesarios sin evidencia concreta que lo apoye y que la medida discrecional de gravedad del delito tiene el efecto de una sanción punitiva por un delito ya juzgado, lo que lo expone a la doble exposición.

El 27 de marzo de 2026, el DCR presentó *Escrito en Cumplimiento de Resolución[6],* en el que afirma que el criterio discrecional de *gravedad del delito* fue aplicado correctamente, por lo que procede confirmar la resolución recurrida.

Con el beneficio de la comparecencia de las partes, resolvemos.

## II. Exposición del Derecho

### A. Revisión judicial de decisiones administrativas

Es doctrina reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial.[7] Ello, en vista al gran conocimiento especializado y experiencia que las agencias ostentan.[8] Esta deferencia se debe a que son estos los que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados.[9]

Así pues, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada,

---

[6] Entrada 3 SUMAC-TA.

[7] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *OSC v. CODEPOLA*, 202 DPR 842, 853 (2019).

[8] *OCS v. Universal*, 187 DPR 164, 178 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).

[9] *OEG v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); The *Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821 (2012); *Accumail P.R. v. Junta Sub. A.A.A.*, 170 DPR 821, 829 (2007); *Mun. San Juan v. Plaza Las Américas*, 169 DPR 310, 324 (2006); *Otero v. Toyota*, 163 DPR 716, 727 (2005); *Rebollo v. Yiyi Motors*, 161 DPR 69 (2004).

siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[10] El criterio rector para la revisión de este tipo de determinación es el de razonabilidad, esto es, si la actuación de la agencia fue ilegal, arbitraria, o tan irrazonable que constituye un abuso de discreción.[11]

La revisión usualmente comprende las siguientes áreas: (1) si se concedió el remedio apropiado; (2) si las determinaciones de hechos son conformes al principio de evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho son correctas.[12]

En el contexto de las determinaciones administrativas sobre el nivel de custodia, el Tribunal Supremo ha opinado que, "[a]l momento de determinarse la procedencia de un cambio en el nivel de custodia, deberá considerarse una serie de factores subjetivos y objetivos, para cuya atención se requiere la pericia del [Departamento de Corrección y Rehabilitación]".[13] También ha expresado que:

> Según el Manual, es al Comité de cada institución carcelaria a quien corresponde realizar la evaluación periódica correspondiente al nivel de custodia asignado a los confinados. (…)

Por lo general, la composición de estos comités la conforman peritos en el campo tales como técnicos sociopenales y oficiales o consejeros correccionales. Estos profesionales cuentan con la capacidad, la preparación, el conocimiento y la experiencia necesarios para atender las necesidades de los confinados y realizar este tipo de evaluaciones. Por esta razón, una determinación formulada por el referido Comité debe ser sostenida por el foro judicial siempre que no sea arbitraria, caprichosa y esté

---

[10] *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).
[11] *Íd.*, pág. 216; *Transp. Sonell v. Jta. Subastas ACT*, 214 DPR ___ (2024), 2024 TSPR 82 (opinión del 24 de julio de 2024).
[12] *Moreno Lorenzo y otros v. Depto. Fam.*, supra, págs. 839-840; *Asoc. Fcias. v. Caribe Specialty, et al. II*, 179 DPR 923, 940 (2009).
[13] *Cruz v. Administración*, 164 DPR 341, 352 (2005).

fundamentada en evidencia sustancial. Es decir, siempre que la decisión sea razonable, cumpla con el procedimiento establecido en las reglas y los manuales, y no altere los términos de la sentencia impuesta, el tribunal deberá confirmarla.[14]

**B. Plan de Reorganización Núm. 2-2011[15] y el Manual para la Clasificación de los Confinados (Reglamento Núm. 9151)**

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, dispone que será política pública del Estado reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva, y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social.[16]

Cónsono con ello, el Art. 10 del Plan de Reorganización Núm. 2-2011[17], estatuye que "[l]a población correccional será sometida a evaluaciones periódicas con el propósito de conocer y analizar su situación social, física, emocional y mental, historial delictivo e identificar sus capacidades, intereses, motivaciones, controles y limitaciones, a los fines de clasificarlos y determinar el plan de acción a tomar en cada caso, en armonía con los principios de tratamiento individualizado y seguridad pública enmarcados en los propósitos de este Plan".[18]

A tales fines, el Departamento aprobó el *Manual para la Clasificación de los Confinados*, Reglamento Núm. 9151, del 22 de enero de 2020, efectivo a partir del 20 de febrero de 2020. El propósito de la reglamentación es establecer un sistema organizado para ingresar, procesar y asignar a los confinados a instituciones y programas del Departamento.[19]

---

[14] *Íd.,* págs. 354-355.
[15] Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, 3 LPRA Ap. XVIII.
[16] *López Borges v. Adm. Corrección*, 185 DPR 603, 619 (2012).
[17] Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, 3 LPRA Ap. XVIII.
[18] *Íd.*
[19] Art. II del Reglamento Núm. 9151.

Como parte de la política de la agencia, se encuentra la clasificación "de acuerdo con el nivel de custodia restrictiva más bajo que se requiera, la asignación de vivienda y la participación de los confinados en programas de trabajo y educación, adiestramiento vocacional y recreación que sean apropiados para ellos".[20] Precisamente, el Tribunal Supremo ha explicado que "la importancia de la reducción del nivel de custodia, como parte del proceso de rehabilitación, se refleja en la regla que enuncia constantemente el [Reglamento Núm. 9151][21]: se tiene que ubicar a cada confinado en el nivel de custodia menos restrictivo posible".[22]

De otro lado, el Artículo IV, Sección 1, del Reglamento Núm. 9151 establece que el Comité de Clasificación y Tratamiento es el responsable de evaluar las necesidades de seguridad y de los programas de los confinados sentenciados. El Comité tiene a su cargo la evaluación de los confinados, en lo concerniente a sus necesidades, aptitudes, intereses, limitaciones y funcionamiento social.[23] Sus objetivos primordiales son la rehabilitación, la asignación de custodia y la seguridad pública.[24]

El sistema consta de una clasificación inicial del confinado, seguida de un proceso de reclasificación[25] periódica de cada reo. En lo atinente, una clasificación objetiva se refiere al "proceso confiable y válido mediante el cual se clasifica a los confinados y se les subdivide en grupos, basándose en varias consideraciones, entre las que se incluyen: la severidad del delito, su historial de delitos anteriores, su comportamiento en las instituciones, los requisitos de

---

[20] Art. III (1) del Reglamento Núm. 9151.

[21] A pesar de que la citada opinión cita el *Manual de Clasificación* de 2000, los principios invocados permanecieron inalterados en la versión del 2020. Perspectiva General (I) del Reglamento Núm. 9151.

[22] *López Borges v. Adm. Corrección*, supra, pág. 608.

[23] Art. IV, Sec. 2 (IV) del Reglamento Núm. 9151.

[24] Art. IV, Sec. 2 (IV)(A) del Reglamento Núm. 9151.

[25] El Reglamento Núm. 9151 define la reclasificación como la "[r]evisión periódica de los confinados en lo que respecta a su progreso como parte del Plan Institucional, así como también a su categoría de custodia". Art. IV, Sec. 1 del Reglamento Núm. 9151.

seguridad y supervisión y las necesidades identificables de programas y servicios específicos".[26] La reglamentación establece, además, que la reclasificación de confinados es el procedimiento para la revisión de la asignación del nivel actual de custodia de cada confinado, con el fin de determinar cuán apropiada es ésta.[27] Al exponer los objetivos perseguidos por dicho sistema, el Reglamento Núm. 9151 dispone el uso del formulario *Escala de Reclasificación de Custodia (Casos Sentenciados)*, reproducido en el Apéndice K, del cuerpo reglamentario, y aclara que:

> [...] La reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pueda surgir.
> La reevaluación de custodia se parece a la evaluación inicial de custodia, pero recalca aún más en la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. Es importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución.[28]

La segunda sección de la *Escala de Reclasificación de Custodia,* denominada *Evaluación de Custodia,* detalla el proceso para revisar y actualizar la evaluación inicial del confinado. La sección contiene la escala de reclasificación de custodia para los casos de confinados sentenciados y enumera ocho criterios para realizar la correspondiente evaluación. Estos son: (1) la gravedad de los cargos y sentencias actuales; (2) el historial de delitos graves previos; (3) el historial de fuga o tentativas de fuga; (4) el número de acciones disciplinarias; (5) las acciones disciplinarias serias; (6) las sentencias anteriores por delitos graves como adultos; (7) la participación en programas; y, (8) la edad actual del miembro de la población correccional.[29]

---

[26] Art. IV, Sec. 1 del Reglamento Núm. 9151.
[27] Art. IV, Sec. 7 (I) del Reglamento Núm. 9151.
[28] Art. IV, Sec. 7 (II) del Reglamento Núm. 9151.
[29] Apéndice K, Sec. II, del Reglamento Núm. 9151.

Una vez completados los ocho renglones de la *Evaluación de Custodia* en la *Escala de Reclasificación de Custodia*, a base del resultado que se obtenga, se recomienda un nivel de custodia, que puede variar entre máxima, mediana o mínima. El nivel de custodia según la escala es el siguiente: 5 puntos o menos, corresponde a una custodia mínima; 5 puntos o menos si el confinado tiene una orden de arresto o detención, corresponde a una custodia mediana; 6 a 10 puntos, corresponde a una custodia mediana; 7 puntos o más en los renglones 1 al 3, corresponde a una custodia máxima; y, 11 puntos o más en los renglones 1 al 8, corresponde a una custodia máxima.[30]

También, el Manual de Clasificación establece unas consideraciones especiales de manejo, las cuales versan sobre los asuntos de administración que merecen atención y posible intervención del personal en términos de vivienda o supervisión especial.[31]

La tercera sección de la *Escala de Reclasificación de Custodia* establece unos criterios adicionales, tanto discrecionales como no discrecionales. Una modificación discrecional se refiere al "conjunto de factores específicos de clasificación que el personal puede usar para modificar la puntuación de clasificación de un confinado, pero solamente con la aprobación del supervisor de clasificación."[32]

La reglamentación establece unas **modificaciones discrecionales para un nivel de custodia más alto**. Estas son: **(1) la gravedad del delito;** (2) el historial de violencia excesiva; (3) la

---

[30] Apéndice K, Sec. III, del Reglamento Núm. 9151.

[31] Los factores de administración son los siguientes: custodia protectiva (para garantizar su seguridad y bienestar); joven adulto (menor de 21 años); psiquiátricas; sesenta años o más de edad; riesgo de suicidio; problemas médicos; impedimentos físicos, y cualquier otra consideración de manejo relacionados con requisitos de vivienda o de supervisión especiales. Apéndice K, Sec. III (B) del Reglamento Núm. 9151.

[32] Art. IV, Sec. 1 del Reglamento Núm. 9151.

afiliación con gangas; (4) la dificultad en el manejo del confinado; (5) los grados de reincidencia; (6) el riesgo de fuga; (7) el comportamiento sexual agresivo; (8) los trastornos mentales o desajustes emocionales; (9) si representa una amenaza o peligro; (10) la desobediencia de las normas o rehusarse al plan de tratamiento; y, (11) el reingreso por violación de normas.[33]

No obstante, "toda modificación discrecional deberá estar **basada en documentación escrita** que evidencia ajustes adecuados y que se ha beneficiado de los programas de tratamientos requeridos, **proveniente de informes disciplinarios**, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social, y cualquier otra información o documento que evidencia ajustes o comportamiento del confinado contrario a las normas y seguridad institucional".[34]

### III.   Aplicación del derecho a los hechos

En su recurso, Negrón Burgos alega que el Comité de Clasificación abusó de su discreción al aplicar la modificación discrecional de *gravedad del delito,* pues dicho criterio ya fue ponderado en la sentencia y en la clasificación inicial. También argumenta que el Reglamento 9151 viola el principio de doble exposición pues lo sanciona por un delito ya juzgado. Entiende que, la actuación y lenguaje utilizado en la resolución por el Comité fue arbitraria y caprichosa. No tiene razón.

El Apéndice K, Sec. III (D) del Reglamento Núm. 9151 define la mencionada modificación discrecional de la siguiente forma:

> Gravedad del delito: La puntuación subestima la gravedad del delito. **El personal debe documentar las características del delito que aparecen en la declaración de los hechos que se están utilizando como fundamento para la decisión de la modificación.** (...) (Énfasis nuestro).

---

[33] Apéndice K, Sec. III (D) del Reglamento Núm. 9151. (Énfasis nuestro).
[34] Apéndice K, Sec. III (D) del Reglamento Núm. 9151.

Conforme expusimos anteriormente, el propósito de la evaluación de clasificación de custodia es verificar la adaptación del confinado y prestar atención a cualquier situación que pueda surgir. La evaluación periódica no necesariamente tiene como resultado un cambio en la clasificación de custodia. En el balance de intereses que conlleva tal determinación, el Comité de Clasificación tiene que ponderar criterios subjetivos y objetivos para asegurar la seguridad de la institución y la rehabilitación del confinado.

Aun cuando previo a la imposición de la modificación discrecional de gravedad del delito en su evaluación, Negrón Burgos obtuvo una puntuación que equivale al nivel de custodia mínima, dicho resultado no es el único criterio que utiliza el Comité de Clasificación para analizar y recomendar el nivel de custodia apropiado para el confinado. Al hacer su determinación sobre reclasificación, el Comité no está obligado a considerar de forma aislada, la puntuación alcanzada como resultado de dicha evaluación y obviar las demás circunstancias o criterios que aplican al caso del confinado.

En el presente caso, el Comité aplicó la modificación discrecional de *gravedad del delito,* la cual aplicó luego de evaluar la totalidad del expediente, y en esta detalló las características del delito como fundamento de su determinación de aplicar la referida modificación discrecional, conforme establece el Apéndice K, Sec. III (D) del Reglamento Núm. 9151. Habida cuenta de lo anterior, la determinación emitida resulta razonable y sostenida por la evidencia que obra en el expediente del recurrente y la misma no resulta arbitraria ni caprichosa. No incidió el Comité al ratificar la custodia del recurrente.

Por lo anterior, concluimos que la determinación del Comité se basó en el expediente administrativo y constituyó una actuación razonable de la agencia, por lo que merece nuestra deferencia.

**IV. Parte dispositiva**

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

**IV. Parte dispositiva**

Por los fundamentos antes expuestos, confirmamos la *Resolución* recurrida.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.